IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

YOLANDA DUNCAN,

Plaintiff,

v.

CIVIL CASE NO.:

1:19-cv-01129-MLB

CITY OF SANDY SPRINGS,
OFFICER RYAN GEHRICKE,
in his individual capacity,
OFFICER JOHN DOE,
in his individual capacity, and
JASON DWAIN ANDERSON.

Defendants.

**PLAINTIFF YOLANDA DUNCAN'S BRIEF IN SUPPORT OF HER
RESPONSE IN OPPOSITION TO DEFENDANTS CITY OF SANDY
SPRINGS AND OFFICER RYAN GEHRICKE'S MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

COMES NOW Plaintiff Yolanda Duncan and shows this Court as follows:

This case involves a disturbing display of a superiority complex by an officer

against an African-American female - which even when taking all of the officer's

allegations as true was still allegedly supported by nothing more than Plaintiff's

1

alleged failure to produce a driver's license following allegations that she caused

four scratches on an unoccupied vehicle (which she did not believe she did and the

officer was fully aware of her belief that she did not cause the scratching). There is

– of course more to the story – as the Plaintiff will further elaborate upon below. To

borrow the words of United States v. Como, 340 F.2d 891 (2nd Cir., 1965) to

dismiss the present suit would be to "as the late Justice Jackson once eloquently

remarked, "obliterate one of the most fundamental distinctions between our form

of government, where officers are under the law, and the police-state where they

are the law." Johnson v. United States, 333 U.S. 10, 17,  68 S.Ct. 367, 370,  92 L.

Ed. 436 (1948). The civilized standards of fundamental fairness developed over the

years in this area must be zealously guarded by the trial and appellate courts, if the

guarantees of the Bill of Rights are to be kept meaningful and not permitted to

evaporate through silent abrogation." Id. at 894-95 (citation in the original).

## I. FACTUAL ALLEGATIONS

As an initial matter Plaintiff objects to the Court's considering of Defendants

exhibits at the motion to dismiss stage. Defendants own caselaw on which they

rely shows that exhibits attached to their Motion to Dismiss are not properly

considered.

For example <u>Bryant v. Avado Brands Inc.</u>, 187 F.3d 1271, 1280 (11th Cir., 1999) held "that the district court was authorized at the motion to dismiss stage to take judicial notice of relevant public documents required to be filed with the SEC, and actually filed, for the purpose of determining what statements the documents contain." <u>United States ex rel. Osheroff v. Humana, Inc.</u>, 776 F.3d 805, 811 (11th Cir., 2015) held that "a district court may consider an extrinsic document even on Rule 12(b)(6) review if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." (citations omitted).

Neither of those cases support consideration of exhibits in the case at bar. Both <u>Bryant</u> and <u>Osheroff</u> involved matters where extrinsic matters were not provided to support the matter asserted therein - rather instead - to show that certain filings were made (<u>Bryant</u>) or that certain disclosures were made (<u>Osheroff</u>), regardless of the truth of their contents. Most importantly – in the case at bar – it is readily apparent that the contents of the police report are not central to the Plaintiff's claim as there is other evidence (such as video, Plaintiff's testimony and other evidence discovery may uncover) that is more likely to be "central" than

the police report. Additionally the truth of the contents of those documents is disputed. For example the picture purportedly showing Plaintiff's car on top of Defendant Anderson's car at best shows two unidentified objects that no reasonable person can identify as vehicles from the picture alone.

While Plaintiff referred to documents such as police report in her Complaint this was done to make sure that the complaint stated more than "bare unadorned allegations," and because the statements made in a police report are likely to be undisputed by Officer Gehricke. It was not done with an intention to validate the truth and accuracy of the entire document referenced.

Relevant to the case at bar (while indeed an extrinsic allegation in this case) is also that at least one video exists which will show (1) that Plaintiff tried to civilly discuss the matter with Officer Gehricke and Defendant Anderson and explain her belief that she did not hit a vehicle (in accordance with police report which also states that Ms. Duncan explained she parked her car very carefully), (2) that officer Gehricke started screaming at Ms. Duncan within minutes of the encounter stating among other things: "Please don't make me make this criminal! It's civil right now!" (3) that shortly thereafter Officer Gehricke walked to his car

to ask another officer if he can arrest Ms. Duncan, (4) that prior to the arrest

Officer Gehricke never warned Ms. Duncan he will arrest her if she does not

produce her driver's license – merely warning her to not "make things worse, and

that (4) bystanders were disturbed enough by officer Gehricke's behavior that they

attempted multiple times to speak to the officers about the situation and were

rebuffed. Ms. Duncan will also testify that she was instructed by Officer Gehricke

to put her hands in a praying position which was why she put her hands in front of

her chest rather than behind her back negating the allegation of post arrest

obstruction.

The preceding paragraph is merely to illustrate the amount of factual dispute

and the need for discovery in this case, rather than a suggestion to rely on any of

the documents referenced at this motion to dismiss stage of the proceeding.

## II. ARGUMENT AND CITATION OF AUTHORITY

### 1. Qualified Immunity

While Defendants correctly state the arguable probable cause standard as

existing "where an officer reasonably but mistakenly believes probable cause

existed in light of the information the officer possessed," Wood v. Kesler, 323 F.3d

872, 882 (2003), the statement in Defendant's brief immediately following (Def. Brief p. 9) that "arguable probable cause does not require proof of every element of the crime" (Citing <u>Grider v. City of Auburn</u>, 618 F.3d 1240, 1257 (11th Cir., 2010)) while technically true may be misleading in this context.

It is important to emphasize that the above statement from <u>Grider</u> talks about **proof** of every element – not probable cause or arguable probable cause supporting every element. It goes without saying that probable cause (or arguable probable cause) as to any element is not "proof" of that element. It is something less than proof. As such this statement cannot be used for a proposition that probable cause for a crime can exist even if there is no probable cause as to one of the elements of the crime.

Whatever quantum of proof is needed at a particular stage – that quantum of proof is required to support <u>every element</u> of the crime. If proof beyond reasonable doubt is required – then every element has to be proven beyond reasonable doubt. If probable cause is required – then there has to be probable cause as to <u>every</u> element of the crime. And if *arguable probable cause* is required – then likewise there has to be arguable probable cause as to <u>every</u> element of the crime.

In this case Defendants allege that there was at least arguable probable cause for Plaintiff's arrest for four different crimes: Hit and Run (OCGA 40-6-270) Duty upon striking unattended vehicle (OCGA 40-6-271), duty to display drivers license (OCGA 40-5-29) and Obstruction (OCGA 16-10-24).

In support of its claim that Plaintiff could have been arrested for Hit and Run (OCGA 40-6-270) Defendants state: "Georgia courts have held that such conduct justifies an arrest for "hit-and-run." Souder v. State, 301 Ga. App. 348, 350, 687 S.E.2d 594, 598 (2009)" (Def. Brief p. 13). This statement is false. Souder case does not hold that. Instead Souder court stated that the information the officer had in that case "authorized the officer to arrest Souder for failing to comply with his duty upon striking an unattended vehicle. See OCGA § 40-6-271(a)" not for Hit and Run. Souder 687 S.E.2d 600. As explained in Plaintiff's complaint the plain language of OCGA 40-6-270 negates the possibility for an arrest for Hit and Run under the circumstances of this case and Souder does not address the applicability of Hit and Run statute to this situation, much less hold that OCGA 40-6-270 applies.

Defendants' claim that Plaintiff could have been arrested for violation of a

duty to display drivers license (OCGA 40-5-29) likewise fails. The first sentence of

OCGA 40-5-29 states: "Every licensee shall have his or her driver's license in his

or her immediate possession at all times when <u>operating a motor vehicle</u>."

(emphasis added). It is undisputed that Ms. Duncan was not operating a motor

vehicle when Officer Gehricke confronted her. She was not sitting in a vehicle with

or without a key in the ignition or with or without an engine running. She was not

even near her vehicle. She was walking out of the door of a gym. Therefore OCGA

40-5-29 is inapplicable.

Next Defendants attempt to argue that Plaintiff could have been arrested for

violation of "duty upon striking unattended vehicle" (OCGA 40-6-271). That

statute imposes what could be called a "duty to report." Essentially the statute

requires the person to stop and report the accident by either locating the other party

and exchanging name and address in person or leaving a written notice containing

same information. The statute says nothing about displaying a drivers' license.

Here it is undisputed that Ms. Duncan stopped. Indeed her car was still

parked at the same place when she returned from the gym and was confronted by

the Officer. She also immediately confirmed her name and ownership of the car to

the Officer in the presence of Mr. Anderson - thereby confirming her name and address. This was all that the statute required. At no point did Ms. Duncan depart the premises of LA Fitness. It is therefore incorrect to argue that Ms. Duncan did not stop. As for "locating" Mr. Anderson – since Mr. Anderson appeared before she departed – this was no different than a situation where the other party is in the immediate vicinity and confronts the first party immediately after the accident and before the first party is able to actively "locate" it. No reasonable person would argue that the statute is not satisfied just before the "stricken" party confronts the "striking" party before the "striking" party locates the "stricken" party when the "striking" party has never left the scene of the accident.

Regardless of the validity of the above argument, however, the Officer was well aware of Ms. Duncan's mens rea and the impossibility of her compliance with OCGA 40-6-271 even assuming arguendo that she indeed did not "locate" Mr. Anderson or exchange information. Officer Gehricke stated in the police report that Ms. Duncan stated she parked her car very carefully. Other evidence will also show that Ms. Duncan tried relentlessly to explain she did not cause the accident. The main point of this is that Officer Gehricke was well aware and could have no doubt

Ms. Duncan was subjectively convinced she did not cause the accident. (While

Plaintiff's complaint does not list as much detail regarding Ms. Duncan's

subjective state of mind or Officer Gehricke's perception of her state of mind – the

complaint does state that Ms. Duncan vehemently denied she caused the accident

and this allegation is sufficient for the purposes of the motion to dismiss.)

While many traffic offenses are considered strict liability offenses it is not

true that strict liability offenses are "offenses with no criminal intent element."

State v. Ogilvie, 734 S.E.2d 50, 53 (Ga., 2012). "[C]riminal intent must be proved

by the state in every prosecution, and that criminal intent does not mean an

intention to violate the law or to violate a penal statute, but simply means to intend

to commit the act which is prohibited by statute." Id. (citations omitted) "[T]he

minimal requirement for a 'strict liability' offense is proof that the proscribed

conduct was performed voluntarily—i.e., that such act must be the product of

conscious mental activity involving effort or determination." Id. (citations omitted)

Officer Gehricke was well aware of Ms. Duncan's conviction that she did

not cause the accident. As such – any failure to report or notify could not have been

caused by "conscious mental activity involving effort or determination."

Furthermore – given that OCGA 40-6-271 contains a "duty to report" it is easy to see how requiring a person to report something they do not know exists (or they are not aware of) would be requiring an impossibility. Such an interpretation of the statute would be absurd and no reasonable person – layman or trained officer would make it. Accordingly – such absurd interpretation could not support arguable probable cause.

Lastly Defendants argue that Plaintiff could have been arrested for Obstruction (OCGA 16-10-24). Defendants reference pre- and post- arrest obstruction. Defendants argue that pre-arrest obstruction is based on Plaintiff's failure to produce her drivers' license. As discussed this argument has no merit as Plaintiff was not required to have her license in her possession while not operating a motor vehicle. Additionally Plaintiff did not impede officer's investigation by not producing her driver's license as the officer already had all the information he needed. In constitutional law there is a distinction between the requirement to identify, which is constitutionally permissible – albeit with some Fifth Amendment concerns see Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty., 542 U. S. 177 (2004), and a requirement to produce an actual identification. Under Georgia

law all instances of an "ID requirement" are tied to the activity the license is required for (such as driving, flying an airplane, etc.). Outside of that the loitering and prowling statute (OCGA 16-11-36) contains a potential requirement for a person to identify themselves – but not to produce a drivers' license or other ID. If an officer cannot demand an ID even pursuant to a so called "stop and identify" statute he can much less manufacture such a requirement in other contexts simply to make an act criminal that is not otherwise such by imposing a duty on the spot and then criminalize the failure to comply with such a newly manufactured duty as "obstruction." Officer Gehricke's statement: "Please don't make me make this criminal! It's civil right now!" confirms that he felt he can make something criminal that is otherwise not if he wanted to.[1] This type of attitude – that an officer – at will - can make something a crime that is otherwise not a crime is an attitude that should disturb anyone who is concerned about protection of civil rights in a

_____

[1] While Plaintiff does not allege this statement in her Complaint she alleges that there are no crimes under Georgia law that she could have been arrested for. Plaintiff gives brief explanation as to why there was no arguable probable cause for her arrest on charges she was actually arrested for. Plaintiff is of course not able (and not required) to explain in her complaint why there was no arguable probable cause for any of the infinite number of hypothetical crimes Defendants may argue she could have been arrested for until such an argument is actually made.

12

free society - as such protections and rights live and die at the juncture of officer –

citizen encounter.

Last but not least – there is no pre-arrest obstruction in this case as it is

clearly established law that an individual may not lawfully be punished for failing

to obey a police officer's unlawful order, and that is especially true if the order

would infringe on one's Constitutionally protected rights: "Obviously… one

cannot be punished for failing to obey the command of an officer if that command

is itself violative of the Constitution."  Wright v. State of Ga., 373 U.S. 284, 291-

92, 83 S. Ct. 1240 (1963); United States v. Dickinson, 465 F.2d 496, 510 (5th Cir.

1972); see also Drews v. Maryland., 381 U.S. 421, 427 n. 6, 85 S. Ct. 1576 (1965)

(Warren, C.J., dissenting) ("it is axiomatic that 'one cannot be punished for failing

to obey the command of an officer if that command is itself violative of the

Constitution.'" (citing Wright)

Wright involved black citizens who were ordered by Savannah police

officers to leave a public park where they were playing basketball.  The Supreme

Court noted that the officers' command was "doubly a violation of petitioners'

constitutional rights" because, as an attempt to unlawfully enforce racial

discrimination in the park, the order violated the citizens' rights under Equal

Protection Clause of the Fourteenth Amendment.  <u>Wright</u>, 373 U.S. at 292.

As for the post-arrest obstruction allegations it should suffice to say that

there are factual discrepancies between the positions of the parties that need to be

further investigated in discovery. As stated Plaintiff's complaint does not state that

the police report represents the four corners of the facts of this case. The Complaint

makes allegations some of which are also supported by the statements of the

Officer himself. That is not to be interpreted as saying that all statements of Officer

Gehricke are true. The complaint clearly disputes the allegations of post arrest

obstruction. As with pre-arrest obstruction the Plaintiff cannot preemptively

anticipate and disprove every hypothetical allegation of obstruction in her

complaint. The allegations made are sufficient to survive the motion to dismiss.

To the extent Defendants claim Plaintiff's screaming was obstruction the

Georgia law provides that an obstruction conviction cannot be solely based "upon a

defendant's act of speaking to, remonstrating with, or even criticizing an officer

during the performance of his duties." <u>Harris v. State</u>, 314 Ga. App. 816, 820

(2012).

## 2. Post Arrest Warrant

Defendants claim that the post-arrest warrant is a definitive pronouncement on the existence of probable cause.[2] This is incorrect. In <u>Malley v. Briggs</u>, 475 U.S. 335, 345-46 (1986) the United States Supreme Court pointed out that "[i]t is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment." <u>Id.</u> <u>See</u> <u>also</u> <u>Barts v. Joyner</u>, 865 F.2d 1187, 1196 (11th Cir., 1989) (The police have it within their power to avoid the damage caused by a false arrest simply by not seeking the warrant.) <u>See</u> <u>also</u> <u>Jones v. Cannon</u>, 174 F.3d 1271 (11th Cir., 1999).

## 3. Favorable Termination

Plaintiff recognizes that the issue of favorable termination presents some unique problems in this case. Notably the Plaintiff is in a Catch 22 situation as to

---

[2] Plaintiff recognizes that Defendants use words "clearest indication of probable cause" rather than "definitive pronouncement" so as to perhaps stop short of claiming that post arrest warrant conclusively establishes probable cause at the time of arrest.

her malicious prosecution claim as the Plaintiff has not heard from any court as to any disposition of her case. Had the Plaintiff waited more than two years in filing the present action and had it later turned out that unbeknownst to her the prosecution (if it indeed existed) had been terminated a long time ago she would have risked letting the statute of limitations run.

Counsel for the Plaintiff has periodically inquired with the State Court of Fulton County as well as with the Fulton County Solicitor's Office as to the status of the case and has not been able to obtain any information. The counsel's last attempt at an inquiry was as late as the day before filing this motion.

As to the best of the Plaintiff's knowledge and upon reasonable inquiry it appears that the case has been "automatically" transferred from Sandy Springs Municipal Court to Fulton County (presumably to be accused in State Court) because the Sandy Springs Municipal Court did not handle arrest cases. The Sandy Springs Municipal Court did not take any action on the case other than "handing it over" to Fulton which was done in the April of 2017.

Following this transfer to Fulton County it does not appear that the case is pending in any court. Plaintiff's counsel has been specifically advised that the case

is not pending in Fulton County State Court as the case has never been accused (and has not been accused for over two years now). As such no entity in Fulton County (court, prosecutor or otherwise) has ever taken any action on this case – the elapsed time now being over two years.

As such the statement that the criminal case is currently pending is inaccurate. The review of the State Court of Fulton County records would indeed reveal that there is no case involving Yolanda Duncan pending in that court. It is likewise inaccurate to state that the prosecution is pending as there has been no action ever taken by the Fulton County Solicitor or any other prosecuting agency in the case.

Therefore, despite Bishop v. State, 582 S.E.2d 571 (Ga. App., 2003) stating that "[a] prosecution commences when a charging instrument, such as an accusation, indictment, or Uniform Traffic Citation ("UTC"), is issued and continues until there has been a final disposition of the case." Id. at 572 (internal citations and quotations omitted), there is realistically and as a practical matter presently no pending prosecution against the Plaintiff in any court in this State.

Plaintiff also notes that the above holding in Bishop is questionable as it

17

effectively eviscerates the two year statute of limitations for misdemeanors in Georgia and removes any role for the prosecutor's office in tolling that statute of limitations. Since virtually every misdemeanor offender receives an UTC that means that the two year statute is tolled immediately in every case. That in turn means that misdemeanor cases can remain pending forever – in other words – there is no statute of limitations for misdemeanors since they virtually all receive a UTC. This unavoidably implicates Due Process issues as it creates a situation where a crime of rape for example would have a shorter statute of limitations than a misdemeanor which received a UTC.

Leaving above discussions aside, however, Plaintiff believes that the most prudent course of action in this case may be to reserve the decision on the question of "favorable termination" until after the discovery is completed to allow the parties to obtain (and if necessary compel) all required information regarding the status of the case.

As it stands now Plaintiff has alleged in her complaint that "Ms. Duncan's case has not been accused to date" which is the information available to her at the moment. However, being that it has been more than two years since the arrest this

information allows for a strong implication that the prosecution will not happen.[3]

## 4. Younger Abstention

Defendants argue that this court should abstain based on Younger abstention doctrine. It is well established, however, that Younger abstention is an exception – not a rule. The general rule is – rather – that the court has a "virtually unflagging obligation" to hear and decide the cases within their jurisdiction. Sprint Commc'ns v. Jacobs, 134 S.Ct. 584, 586 (2013). Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992) (abstention from the exercise of federal jurisdiction was the exception, not the rule, and it should rarely be invoked.) Additionally, even if requirements for Younger abstention are met, the court has discretion, rather than a requirement to abstain. "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Kendall v. Russell, 572 F.3d 126, 131 (3rd Cir., 2009) citing Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005)

---

[3] Ironically the arguments for both Plaintiff and Defendants, of course, would have been no different had it been 20 years since the arrest. This is due to the anomaly caused by the Bishop case.

and <u>Younger v. Harris</u>, 401 U.S. 37,  91 S.Ct. 746,  27 L.Ed.2d 669 (1971).

The Supreme Court has held that Younger abstention is only appropriate in three limited types of circumstances in which there is: "(1) a parallel and pending state criminal proceeding; (2) a state civil enforcement proceeding; or (3) a state civil proceeding involving an order that is 'uniquely in furtherance of the state courts' ability to perform their judicial functions." <u>Dandar v. Church of Scientology Flag Serv. Org., Inc.</u>, 619 F. App'x 945, 947 (11th Cir. 2015) (quoting <u>Sprint</u>, 134 S. Ct. at 591). In case of a parallel and pending state criminal proceeding the abstention is appropriate if (1) the state criminal proceeding is ongoing; (2) the proceeding implicates an important state interest; and (3) there is an adequate opportunity to raise a constitutional challenge in the state court proceeding. <u>Chen ex rel. V.D. v. Lester</u>, 364 F. App'x 531, 535 (11th Cir. 2010).

As for the principles of comity it is hard to argue that the federal action would interfere with states' rights when for over two years the state has taken no action whatsoever in the criminal case in question.

As to the specific elements of the Younger abstention – none of the three criteria are satisfied. (1) As discussed under "favorable termination" supra, there is

no criminal proceeding pending in any court. (2) The proceeding – even if it existed - does not implicate an important state interest. As demonstrated under the heading of "qualified immunity" supra – the determination of arguable probable cause in this case turns largely on reading the plain language of the statutes in question rather than complex issues of reconciling conflicting state caselaw or navigating a limited construction for example. Instead the only state law questions involved here have to do with plain and straightforward application of statutes at issue. It is also difficult to argue that the state interest is deemed important when the state itself has taken no action in years to address it. (3) There is no adequate opportunity for Plaintiff to raise a constitutional challenge in the state court proceeding as the statute of limitations on her false arrest claim has ran by now.

## 5. Excessive Force

Excessive force is a heavily factual inquiry not appropriate for determination at the motion to dismiss stage. In fact the case cited by Defendants <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 2003 WL 22799497 (11th Cir., 2003) was a summary judgment case where the court concluded the arrest was lawful. The court also pointed out that factors to be considered include "the severity of the crime at issue,

whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 1094. Citing Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir.2002).

Here – in contrast – the arrest was not lawful and the alleged crime Ms. Duncan was arrested for could have not been more de-minimis along with her not being a threat to anyone's safety. On the other hand her injuries were sufficient for the jail to refuse to accept her. As such the allegations of Plaintiff's complaint are sufficient to survive a motion to dismiss.

## 6. Municipal liability

Defendants make much of their allegation that Officer Gehricke's conduct was reasonable because he consulted another officer and then turn around to say that this same conduct is not enough to allege municipal liability.

To be sure – Officer Gehricke made his decision to arrest before he asked the second officer (Defendant John Doe) for second opinion. Asking for a second opinion does not insulate Officer Gehricke from liability for what he should have known was a violation of clearly established law. What it does suggest, however, is that there was at least one other officer in the department who had an equally

inaccurate view of the law. While trying to determine the role or job position of

Officer John Doe may standing alone be seen as speculation – the fact is that

Officer Doe was either a final decision maker or if he was not – then he was just

another officer in the department who was just as poorly trained as Officer

Gehricke. Either scenario presents a sufficiently specific allegation to survive

motion to dismiss and warrants discovery into actual training and other practices

within the Sandy Springs Police department relevant to the Monell claim.

## 6. State Malicious Prosecution Claim

Defendants ask the Court to dismiss the state malicious prosecution claim

because of lack of allegations of actual malice. However the Plaintiff is not

required to make detailed factual analysis of malice. Plaintiff alleged that

Defendant Gehricke consulted with another officer before effecting the arrest. This

is an indication that he made a decision to arrest before seeking the second opinion.

As further evidence will reveal (and as mentioned above) Officer Gehricke started

screaming at Ms. Duncan while she was trying to protest her innocence (and was

trying to explain she did not hit Defendant Anderson's car) threatened her by

stating he can "make this criminal" and then shortly thereafter retreated to his

patrol car to seek the "blessing" of Officer Doe. Those are actions of an officer who made a predetermined intentional decision to arrest the Plaintiff in order to essentially show her "who's boss" and not for anything she did wrong.

### III. CONCLUSION

For all the foregoing reasons Plaintiff asks this Court to deny Defendants Motion to Dismiss as the allegations of her complaint are detailed enough to satisfy the pleading requirement. Plaintiff is entitled to damages for being arrested, prosecuted and subjected to excessive force for doing nothing more than protesting her innocence which ultimately was corroborated by decision taken by her insurance company.

Respectfully submitted this the 10th day of May, 2019.

/s/Drago Cepar, Jr.
Drago Cepar, Jr.
Georgia Bar No. 142362

1900 The Exchange
Suite 490
Atlanta, Georgia 30339
Phone: 770-940-3233
Fax: 770-874-2987
dcepar@gmail.com
Counsel for Plaintiff

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

/s/ Drago Cepar, Jr.
Drago Cepar, Jr.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed this PLAINTIFF

YOLANDA DUNCAN'S BRIEF IN SUPPORT OF HER RESPONSE IN

OPPOSITION TO DEFENDANTS CITY OF SANDY SPRINGS AND OFFICER

RYAN GEHRICKE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT with

the Clerk of Court using the CM/ECF system which will automatically send email

notifications of such filing to the following attorneys of record:

> Wesley C. Jackson
> Sun S. Choy
> 100 Galleria Parkway
> Suite 1600
> Atlanta, Georgia 30339-5948

This 10th day of May, 2019.

> /s/Drago Cepar, Jr.
> Drago Cepar, Jr.
> Georgia Bar No. 142362

1900 The Exchange
Suite 490
Atlanta, Georgia 30339
Phone: 770-940-3233
Fax: 770-874-2987
dcepar@gmail.com