IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

YOLANDA DUNCAN,

Plaintiff,

v.

CITY OF SANDY SPRINGS,
OFFICER RYAN GEHRICKE,
in his individual capacity,
OFFICER JOHN DOE,
in his individual capacity, and
JASON DWAIN ANDERSON.

Defendants.

CIVIL CASE NO.:

1:19-cv-01129-MLB

**PLAINTIFF YOLANDA DUNCAN'S BRIEF IN SUPPORT OF HER
RESPONSE IN OPPOSITION TO DEFENDANTS CITY OF SANDY
SPRINGS AND OFFICER RYAN GEHRICKE'S MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

COMES NOW Plaintiff Yolanda Duncan and shows this Court as follows:

This case involves a disturbing display of a retaliatory animus by an officer against

an African-American female - which even when taking all of the officer's

allegations as true was still allegedly supported by nothing more than Plaintiff's

alleged failure to produce a driver's license following allegations that she caused four scratches on an unoccupied vehicle (where the officer was fully aware of her belief that she did not cause the scratching). To borrow the words of <u>United States v. Como</u>, 340 F.2d 891 (2nd Cir., 1965) to dismiss the present suit would be to "obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law. … The civilized standards of fundamental fairness developed over the years in this area must be zealously guarded by the trial and appellate courts, if the guarantees of the Bill of Rights are to be kept meaningful and not permitted to evaporate through silent abrogation." <u>Id.</u> at 894-95 (citations omitted).

### I. FACTUAL ALLEGATIONS

Plaintiff objects to the Court's considering of Defendants' exhibits at the motion to dismiss stage. This result is mandated by Defendants' own caselaw.

For example <u>Bryant v. Avado Brands Inc.</u>, 187 F.3d 1271, 1280 (11th Cir., 1999) held "that the district court was authorized at the motion to dismiss stage to take judicial notice of relevant public documents required to be filed with the SEC, and actually filed, for the purpose of determining what statements the documents

contain." <u>United States ex rel. Osheroff v. Humana, Inc</u>., 776 F.3d 805, 811 (11th Cir., 2015) held that "a district court may consider an extrinsic document even on Rule 12(b)(6) review if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." (citations omitted).

Neither of those cases support consideration of exhibits in the case at bar. Both <u>Bryant</u> and <u>Osheroff</u> involved matters where extrinsic matters were not provided to support **the matter asserted therein** - rather instead - to show that certain filings were made (<u>Bryant</u>) or that certain disclosures were made (<u>Osheroff</u>), **regardless of the truth of their contents**. Most importantly – in the case at bar – it is readily apparent that the contents of the police report are not central to the Plaintiff's claim as there is other evidence (such as video, Plaintiff's testimony and other evidence discovery may uncover) that is more likely to be "central" than the police report. Additionally the truth of the contents of those documents is disputed. For example the picture purportedly showing Plaintiff's car on top of Defendant Anderson's car at best shows two unidentified objects that no reasonable person can even identify as vehicles from the picture alone.

While Plaintiff referred to documents such as police report in her Complaint

this was done to make sure that the complaint stated more than "bare unadorned allegations," and because the statements made in a police report are likely to be undisputed by Officer Gehricke. It was not done with an intention to validate the truth and accuracy of the entire document referenced.

The allegations show (1) that Plaintiff tried to civilly discuss the matter with Officer Gehricke and Defendant Anderson and explain her belief that she did not hit a vehicle, (2) that officer Gehricke started screaming at Ms. Duncan within minutes of the encounter stating among other things: "Please don't make me make this criminal! It's civil right now!" (3) that shortly thereafter Officer Gehricke walked to his car to ask another officer if he can arrest Ms. Duncan, (4) that prior to the arrest Officer Gehricke never warned Ms. Duncan he will arrest her if she does not produce her driver's license – merely warning her to not "make things worse," and that (4) bystanders were disturbed enough by officer Gehricke's behavior that they attempted multiple times to speak to the officers about the situation and were rebuffed. Ms. Duncan was instructed by Officer Gehricke to put her hands in a praying position which was why she put her hands in front of her chest rather than behind her back negating the allegation of post arrest obstruction.

## II. ARGUMENT AND CITATION OF AUTHORITY

### 1. Qualified Immunity

While Defendants correctly state the arguable probable cause standard as existing "where an officer reasonably but mistakenly believes probable cause existed in light of the information the officer possessed," Wood v. Kesler, 323 F.3d 872, 882 (2003), the statement in Defendant's brief immediately following (Def. Brief p. 8) that "arguable probable cause does not require proof of every element of the crime" (Citing Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir., 2010)) while technically true may be misleading in this context.

It is important to emphasize that the above statement from Grider talks about **proof** of every element – not **probable cause** or **arguable probable cause** supporting every element. It goes without saying that probable cause (or arguable probable cause) as to any element is not "proof" of that element. It is something less than proof. As such this statement cannot be used for a proposition that probable cause for a crime can exist even if there is no probable cause as to one of the elements of the crime.

Whatever quantum of proof is needed at a particular stage – that quantum of

proof is required to support **every element** of the crime. If proof beyond

reasonable doubt is required – then every element has to be proven beyond

reasonable doubt. If probable cause is required – then there has to be probable

cause as to **every** element of the crime. And if *arguable probable cause* is required

– then likewise there has to be arguable probable cause as to **every** element of the

crime.

In this case Defendants allege that there was at least arguable probable cause

for Plaintiff's arrest for four different crimes: Hit and Run (OCGA 40-6-270) Duty

upon striking unattended vehicle (OCGA 40-6-271), duty to display drivers license

(OCGA 40-5-29) and Obstruction (OCGA 16-10-24).

In support of its claim that Plaintiff could have been arrested for Hit and Run

(OCGA 40-6-270) Defendants state: "Georgia courts have held that such conduct

justifies an arrest for "hit-and-run." Souder v. State, 301 Ga. App. 348, 350, 687

S.E.2d 594, 598 (2009)" (Def. Brief p. 12). This statement is false. Souder case

does not hold that. Instead Souder court stated that the information the officer had

in that case "authorized the officer to arrest Souder for failing to comply with his

duty upon striking an unattended vehicle. See OCGA § 40-6-271(a)" not for Hit

and Run. <u>Souder</u> 687 S.E.2d 600. Indeed the plain language of OCGA 40-6-270 negates the possibility of an arrest for Hit and Run under the present facts and <u>Souder</u> does not address the applicability of Hit and Run statute to such a situation - much less hold that OCGA 40-6-270 applies.

Defendants' claim that Plaintiff could have been arrested for violation of a duty to display drivers license (OCGA 40-5-29) likewise fails. The first sentence of OCGA 40-5-29 states: "Every licensee shall have his or her driver's license in his or her immediate possession at all times when **operating a motor vehicle**." (emphasis added). It is undisputed that Ms. Duncan was not operating a motor vehicle when Officer Gehricke confronted her. She was not sitting in a vehicle with or without a key in the ignition or with or without an engine running. She was not even near her vehicle. She was walking out of the door of a gym. Therefore OCGA 40-5-29 is inapplicable. It is absurd to argue (or try to interpret a statute as saying) that Plaintiff had a duty to display her drivers license when she did not have a duty to have it in her possession in the first place.[1]

---

[1] Consider in this context statement by Justice Ginsburg in <u>Nieves v. Bartlett</u>, 139 S. Ct. 1715, 1734 (2019): "Given the array of laws proscribing, e.g., breach of the peace, disorderly conduct, obstructing public ways, failure to comply with a peace

Next Defendants attempt to argue that Plaintiff could have been arrested for violation of "duty upon striking unattended vehicle" (OCGA 40-6-271). That statute imposes what could be called a "duty to report." The statute requires the person to stop and report the accident by either locating the other party and exchanging name and address in person or leaving a written notice containing same information. The statute says nothing about displaying a drivers' license.

Here it is undisputed that Ms. Duncan stopped. Her car was still parked at the same place when she returned from the gym and was confronted by the Officer. She also immediately confirmed her name and ownership of the car to the Officer in the presence of Mr. Anderson - thereby confirming her name and address. This was all that the statute required. At no point did Ms. Duncan depart the premises of LA Fitness. It is thus incorrect to argue that Ms. Duncan did not stop. As for

---

officer's instruction, and loitering, police may justify an arrest as based on probable cause when the arrest was in fact prompted by a retaliatory motive. If failure to show lack of probable cause defeats an action under 42 U.S.C. § 1983, only entirely baseless arrests will be checked." (Justice GINSBURG, concurring in the judgment in part and dissenting in part.) Luckily – this is just such a baseless arrest – and therefore Justice Ginsburg's concerns do not apply here. Nevertheless this statement well illustrates the typical post hoc attempts to find a "crime" that Plaintiff could have been allegedly charged with – no matter how strained the logic – all in a desperate attempt to cloak the officer with qualified immunity at all cost.

"locating" Mr. Anderson – Mr. Anderson appeared before she departed. No reasonable person would argue that the statute is not satisfied just because the "stricken" party confronts the "striking" party before the "striking" party locates the "stricken" party when the "striking" party has never left the scene of the accident.

Regardless of the validity of the above argument, however, the Officer was well aware of Ms. Duncan's *mens rea* and the impossibility of her compliance with OCGA 40-6-271 even assuming arguendo that she indeed did not "locate" Mr. Anderson or exchange information.[2] Officer Gehricke stated in the police report that Ms. Duncan stated she parked her car very carefully. Ms. Duncan also tried relentlessly to explain she did not cause the accident. The point is that Officer Gehricke was well aware and could have no doubt Ms. Duncan was subjectively convinced she did not cause the accident even if he did not believe her.

While many traffic offenses are considered strict liability offenses it is not

---

[2] Defendants' argument that this knowledge is irrelevant is false. This knowledge is to be considered together with any other "facts and circumstances **within the officer's knowledge** of which he or she has reasonably trustworthy information" (Def. Brief p. 8) – which knowledge is determinative of whether the officer had probable cause or not. <u>Wood v. Kessler</u>, 323 F.3d 872, 882 (11th Cir. 2003)

true that strict liability offenses are "offenses with no criminal intent element."

State v. Ogilvie, 734 S.E.2d 50, 53 (Ga., 2012). "[C]riminal intent must be proved

by the state in every prosecution, and that criminal intent does not mean an

intention to violate the law or to violate a penal statute, but simply means to intend

to commit the act which is prohibited by statute." Id. (citations omitted) "[T]he

minimal requirement for a 'strict liability' offense is proof that the proscribed

conduct was performed voluntarily—i.e., that such act must be the product of

conscious mental activity involving effort or determination." Id. (citations omitted)

Officer Gehricke was well aware of Ms. Duncan's conviction that she did

not cause the accident. As such – any failure to report or notify could not have been

caused by "conscious mental activity involving effort or determination."

Furthermore – given that OCGA 40-6-271 contains a "duty to report" it is

easy to see how requiring a person to report something they do not know exists (or

they are not aware of) would be requiring an impossibility. Such an interpretation

of the statute would be absurd and no reasonable person – layman or trained officer

would make it. Accordingly – such absurd interpretation could not support

arguable probable cause.

Lastly Defendants argue that Plaintiff could have been arrested for Obstruction (OCGA 16-10-24). Defendants reference pre- and post- arrest obstruction and they need to be analyzed separately. Defendants argue that **pre-arrest obstruction** is based on Plaintiff's failure to produce her drivers' license. This argument has no merit as Plaintiff was not required to have her license in her possession while not operating a motor vehicle. Additionally Plaintiff did not impede officer's investigation by not producing her driver's license as the officer already had all the information he needed. In constitutional law there is a distinction between the requirement to identify, which is constitutionally permissible – albeit with some Fifth Amendment concerns see <u>Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.</u>, 542 U. S. 177 (2004), and a requirement to produce an actual identification. Under Georgia law all instances of an "ID requirement" are tied to the activity the license is required for (such as driving, flying an airplane, etc.). Outside of this the loitering and prowling statute (OCGA 16-11-36) contains a potential requirement for a person to identify themselves – but not to produce a drivers' license or other ID. If an officer cannot demand an ID even pursuant to a so called "stop and identify" statute he can much

less manufacture such a requirement in other contexts **simply to make an act criminal that is not otherwise such** by inventing a duty on the spot and then criminalize the failure to comply with such a newly invented duty as "obstruction." Officer Gehricke's statement: "Please don't make me make this criminal! It's civil right now!" confirms that he was doing just that - in order to punish Ms. Duncan for her speech. This belief – that an officer – at will - can make something a crime that is otherwise not a crime is a belief that should disturb anyone who values protection of civil rights in a free society – because such protections and rights live and die at the juncture of officer – citizen encounter.

Alternatively there is no pre-arrest obstruction in this case as it is clearly established law that an individual may not lawfully be punished for failing to obey a police officer's unlawful order, and that is especially true if the order would infringe on one's Constitutionally protected rights: "Obviously… one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution." Wright v. State of Ga., 373 U.S. 284, 291-92, 83 S. Ct. 1240 (1963); United States v. Dickinson, 465 F.2d 496, 510 (5th Cir. 1972); see also Drews v. Maryland., 381 U.S. 421, 427 n. 6, 85 S. Ct. 1576 (1965) (Warren,

C.J., dissenting) ("it is axiomatic that 'one cannot be punished for failing to obey the command of an officer if that command is itself violative of the Constitution.'" (citing <u>Wright</u>)

<u>Wright</u> involved black citizens who were ordered by Savannah police officers to leave a public park where they were playing basketball. The Supreme Court noted that the officers' command was "doubly a violation of petitioners' constitutional rights" because, as an attempt to unlawfully enforce racial discrimination in the park, the order violated the citizens' rights under Equal Protection Clause of the Fourteenth Amendment. <u>Wright</u>, 373 U.S. at 292.

As for the **post-arrest obstruction** allegations – they are irrelevant to the issue of whether the arrest was legal or whether the officer had arguable probable cause therefor. Additionally, there are factual discrepancies between the positions of the parties that need to be further investigated in discovery. The complaint disputes the allegations of post arrest obstruction. To the extent Defendants claim Plaintiff's screaming was obstruction the Georgia law provides that an obstruction conviction cannot be solely based "upon a defendant's act of speaking to, remonstrating with, or even criticizing an officer during the performance of his

duties." <u>Harris v. State</u>, 314 Ga. App. 816, 820 (2012). Regardless - anything done by Ms. Duncan after the Officer initiated the arrest is irrelevant to the issue of whether the decision to arrest itself was supported by arguable probable cause.

## 2. Post Arrest Warrant

Defendants claim that the post-arrest warrant is a definitive pronouncement on the existence of probable cause.[3] This is incorrect. In <u>Malley v. Briggs</u>, 475 U.S. 335, 345-46 (1986) the United States Supreme Court pointed out that "[i]t is true that in an ideal system an unreasonable request for a warrant would be harmless, because no judge would approve it. But ours is not an ideal system, and it is possible that a magistrate, working under docket pressures, will fail to perform as a magistrate should. We find it reasonable to require the officer applying for the warrant to minimize this danger by exercising reasonable professional judgment." <u>Id.</u> <u>See</u> <u>also</u> <u>Barts v. Joyner</u>, 865 F.2d 1187, 1196 (11th Cir., 1989) (The police have it within their power to avoid the damage caused by a false arrest simply by not seeking the warrant.) <u>See</u> <u>also</u> <u>Jones v. Cannon</u>, 174 F.3d 1271 (11th Cir., 1999).

---

[3] Plaintiff recognizes that Defendants use words "clearest indication of probable cause" rather than "definitive pronouncement" so as to perhaps stop short of claiming that post arrest warrant conclusively establishes probable cause at the time of arrest.

## 3. Favorable Termination

Plaintiff recognizes that the issue of favorable termination presents some unique problems in this case. Notably the Plaintiff is in a Catch 22 situation as to her malicious prosecution claim as the Plaintiff has not heard from any court as to any disposition of her case (or initiation of prosecution for that matter). Had the Plaintiff waited more than two years in filing the present action and had it later turned out that unbeknownst to her the prosecution (if it indeed existed) had been terminated a long time ago (or never initiated to begin with) she would have risked letting the statute of limitations run.

Counsel for the Plaintiff has periodically inquired with the State Court of Fulton County as well as with the Fulton County Solicitor's Office as to the status of the case and has not been able to obtain any information. The counsel's last attempt at an inquiry was a few months before filing this motion.

As to the best of the Plaintiff's knowledge and upon reasonable inquiry it appears that the case has been "automatically" transferred from Sandy Springs Municipal Court to Fulton County (presumably to be accused in State Court).

Following this transfer to Fulton County it does not appear that the case is

pending in any court. Plaintiff's counsel has been specifically advised that the case is not pending in Fulton County State Court as the case has never been accused (and has not been accused for almost three years now). As such no entity in Fulton County (court, prosecutor or otherwise) has ever taken any action on this case – the elapsed time now being almost three years.

As such the statement that the criminal case is currently pending is inaccurate. The review of the State Court of Fulton County records indeed reveals that there is no case involving Yolanda Duncan pending in that court. It is likewise inaccurate to state that the prosecution is pending as there has been no action ever taken by the Fulton County Solicitor or any other prosecuting agency in the case.

Therefore, despite <u>Bishop v. State</u>, 582 S.E.2d 571 (Ga. App., 2003) stating that "[a] prosecution commences when a charging instrument, such as an accusation, indictment, or Uniform Traffic Citation ("UTC"), is issued and continues until there has been a final disposition of the case." <u>Id.</u> at 572 (internal citations and quotations omitted), there is realistically and as a practical matter presently no pending prosecution against the Plaintiff in any court in this State.

Plaintiff also notes that the above holding in <u>Bishop</u> is questionable as it

effectively eviscerates the two year statute of limitations for misdemeanors in Georgia and removes any role for the prosecutor's office in tolling that statute of limitations. Since virtually every misdemeanor offender receives an UTC this means that the two year statute is tolled immediately in every case. That in turn means that misdemeanor cases can remain pending forever – in other words – there is no statute of limitations for misdemeanors as they virtually all receive a UTC. This implicates Due Process issues as it creates a situation where a crime of rape for example would have a shorter statute of limitations than a misdemeanor which received a UTC.

Plaintiff submits that the necessary course of action in this case is to reserve the decision on the question of "favorable termination" until after the discovery is completed to allow the parties to obtain (and if necessary compel) all required information regarding the status of the case from the relevant judicial agencies.

As it stands now Plaintiff has alleged in her complaint that "Ms. Duncan's case has not been accused to date" which is the information available to her at the moment. However, being that it has been almost three years since the arrest this

information allows for a strong implication that the prosecution will not happen.[4]

## 4. Younger Abstention

Defendants argue that this court should abstain based on Younger abstention doctrine. It is well established, however, that Younger abstention is an exception – not a rule. The general rule is – rather – that the court has a "virtually unflagging obligation" to hear and decide the cases within their jurisdiction. Sprint Commc'ns v. Jacobs, 134 S.Ct. 584, 586 (2013). Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992) (abstention from the exercise of federal jurisdiction was the exception, not the rule, and it should rarely be invoked.) Additionally, even if requirements for Younger abstention are met, the court has discretion, rather than a requirement to abstain. "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Kendall v. Russell, 572 F.3d 126, 131 (3rd Cir., 2009) citing Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005)

---

[4] Ironically the arguments for both Plaintiff and Defendants, of course, would have been no different had it been 20 years since the arrest. This is due to the anomaly caused by the Bishop case.

and <u>Younger v. Harris</u>, 401 U.S. 37,  91 S.Ct. 746,  27 L.Ed.2d 669 (1971).

The Supreme Court has held that Younger abstention is only appropriate in three limited types of circumstances in which there is: "(1) a parallel and pending state criminal proceeding; (2) a state civil enforcement proceeding; or (3) a state civil proceeding involving an order that is 'uniquely in furtherance of the state courts' ability to perform their judicial functions." <u>Dandar v. Church of Scientology Flag Serv. Org., Inc.</u>, 619 F. App'x 945, 947 (11th Cir. 2015) (quoting <u>Sprint</u>, 134 S. Ct. at 591). In case of a parallel and pending state criminal proceeding the abstention is appropriate if (1) the state criminal proceeding is ongoing; (2) the proceeding implicates an important state interest; and (3) there is an adequate opportunity to raise a constitutional challenge in the state court proceeding. <u>Chen ex rel. V.D. v. Lester</u>, 364 F. App'x 531, 535 (11th Cir. 2010).

As for the principles of comity it is hard to argue that the federal action would interfere with states' rights when for almost three years the state has taken no action whatsoever in the criminal case in question.

As to the specific elements of the Younger abstention – none of the three criteria are satisfied. (1) As discussed under "favorable termination" supra, there is

no criminal proceeding pending in any court. (2) The proceeding – even if it existed - does not implicate an important state interest. The determination of arguable probable cause in this case turns largely on reading the **plain language** of the statutes in question rather than complex issues of reconciling conflicting state caselaw or navigating a limited construction for example. Instead the only state law questions involved here have to do with plain and straightforward application of statutes at issue. It is also difficult to argue that the state interest is deemed important when the state itself has taken no action in years to address it. (3) There is no adequate opportunity for Plaintiff to raise a constitutional challenge in the state court proceeding as the statute of limitations on her false arrest claim has ran.

## 5. Excessive Force

Excessive force is a heavily factual inquiry not appropriate for determination at the motion to dismiss stage. In fact the case cited by Defendants <u>Durruthy v. Pastor</u>, 351 F.3d 1080, 2003 WL 22799497 (11th Cir., 2003) was a summary judgment case where the court concluded the arrest was lawful. The court also pointed out that factors to be considered include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or

others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 1094. Citing Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir.2002).

Here – in contrast – the arrest was not lawful and the alleged crime Ms. Duncan was arrested for could have not been more de-minimis along with her not being a threat to anyone's safety. On the other hand her injuries were sufficient for the jail to refuse to accept her. As such the allegations of Plaintiff's complaint are sufficient to survive a motion to dismiss.

## 6. Municipal liability

Defendants make much of their allegation that Officer Gehricke's conduct was reasonable because he consulted another officer but then turn around to say that this same conduct is not enough to allege municipal liability.

To be sure – Officer Gehricke made his decision to arrest before he asked the second officer (Defendant John Doe) for second opinion. Asking for a second opinion does not insulate Officer Gehricke from liability for what he should have known was a violation of clearly established law. What it does suggest, however, is that there was at least one other officer in the department who had an equally inaccurate view of the law. Officer Doe was either a final policy maker - or if he

was not – then he was just another officer in the department who was just as poorly trained as Officer Gehricke – indicating a failure to train problem. Either scenario presents a sufficiently specific allegation to survive motion to dismiss and warrants discovery into actual training and other practices within the Sandy Springs Police department relevant to the <u>Monell</u> claim.

## 7. State Malicious Prosecution Claim

Defendants claim that Plaintiff failed to allege actual malice. Plaintiff alleged that Defendant Gehricke consulted with another officer before effecting the arrest. This indicates that he made a decision to arrest before seeking the second opinion. Officer Gehricke started screaming at Ms. Duncan while she was trying to protest her innocence (and was trying to explain she did not hit Defendant Anderson's car), threatened her by stating he can "make this criminal" and then shortly thereafter retreated to his patrol car to seek the "blessing" of Officer Doe. Those are actions of an officer who made a predetermined intentional decision to arrest the Plaintiff (not an officer who simply acted with reckless disregard for the consequences of his actions) and did so in furtherance of his plan to punish her for protesting her innocence.

**8. First Amendment Retaliation (Count 6)**

Defendants don't dispute that Plaintiff was arrested because of her speech. However, they claim that Plaintiff has not adequately pled that this was done under the circumstances where "otherwise similarly situated individuals not engaged in the same sort of protected speech had not been" arrested. <u>Nieves</u> at 1727.

Defendants misread the above pleading requirement. <u>Nieves</u> speaks of **conduct** that similarly situated individuals have engaged in – not the **crime** with which they happened to be charged. Therefore the question is whether the conduct (in this case failure to produce a drivers license in the aftermath of an allegation of causing miniscule damage) is one that would typically trigger an arrest. To ask how likely is a crime of obstruction to result in an arrest is to ask the wrong question. Rather – the proper question is how likely is a failure to produce a drivers license (under above circumstances) to result in an arrest – something that according to Defendants constitutes a violation of OCGA 40-5-29. Plaintiff is confident that given the chance discovery will show that the number of times anyone has ever been arrested for violation of OCGA 40-5-29 under the circumstances at issue is

zero.[5] Furthermore, while Plaintiff never claimed that the officer being "mad" is

relevant – the conduct and statements made by the officer are.[6]

## 9. Punitive damages

Defendants claim that "Because all the claims against Officer Gehricke fail

… plaintiff is not entitled to punitive damages from him." As the Plaintiff has

demonstrated above none of the claims against Officer Gehricke should fail and

therefore punitive damages should be allowed.

## III. CONCLUSION

Plaintiff asks this Court to deny Defendants' Motion to Dismiss. Were the

Court to decide that a reasonable officer can arrest an individual where that officer

believes: (1) that the individual at best unknowingly caused some extremely minor

damage, (2) the individual confirmed her identity, (3) the individual failed to

---

[5] In fact Justice Gorsuch goes even further: "…if the only offense for which probable cause to arrest existed was a minor infraction of the sort that wouldn't normally trigger an arrest in the circumstances—or if the officer couldn't identify a crime for which probable cause existed until well after the arrest—then causation might be a question for the jury." Nieves at 1732 (Justice GORSUCH, concurring in part and dissenting in part). Such is the case with the alleged violation of OCGA 40-5-29 in the present case.

[6] Admissions might be enough to allow a claim to proceed. Nieves at 1734 (Justice GORSUCH, concurring in part and dissenting in part). In addition – evidence of officer's motivation is crucial. See Id. at 1728. (majority opinion).

display a drivers' license where the law doesn't require her to have such a license in her possession, and (4) the individual begged the officer to explain her side of the story and protested her innocence – then one should be seriously concerned about how much freedom there is left (whether to protest one's innocence or simply to go about one's business without illegal government intrusion) and how close have we come to a police state.[7]

Plaintiff is entitled to damages for being arrested, prosecuted and subjected to excessive force for doing nothing more than protesting her innocence which ultimately was corroborated by decision taken by her insurance company.

Respectfully submitted this the 19th day of December, 2019.

/s/Drago Cepar, Jr.
Drago Cepar, Jr.
Georgia Bar No. 142362

1900 The Exchange
Suite 490
Atlanta, Georgia 30339
Phone: 770-940-3233
Fax: 770-874-2987
dcepar@gmail.com
Counsel for Plaintiff

---

[7] Freedom "verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Houston v. Hill, 482 U.S. 451, 462-63 (1987).

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

/s/ Drago Cepar, Jr.
Drago Cepar, Jr.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I electronically filed this PLAINTIFF YOLANDA DUNCAN'S BRIEF IN SUPPORT OF HER RESPONSE IN OPPOSITION TO DEFENDANTS CITY OF SANDY SPRINGS AND OFFICER RYAN GEHRICKE'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system which will automatically send email notifications of such filing to the following attorneys of record:

| | |
|---|---|
| Wesley C. Jackson | Kevin A. Doyle |
| Sun S. Choy | Justin Averett |
| 100 Galleria Parkway | Lokey, Mobley, and Doyle, LLP |
| Suite 1600 | 8425 Dunwoody Place |
| Atlanta, Georgia 30339-5948 | Atlanta, GA 30350 |

This 19th day of December, 2019.

/s/Drago Cepar, Jr.
Drago Cepar, Jr.
Georgia Bar No. 142362

1900 The Exchange
Suite 490
Atlanta, Georgia 30339
Phone: 770-940-3233
Fax: 770-874-2987
dcepar@gmail.com