## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Yolanda Duncan,

                Plaintiff,        Case No. 1:19-cv-01129

v.                                Michael L. Brown
                                United States District Judge

City of Sandy Springs, et al.,

                Defendants.

_____/

## OPINION & ORDER

Plaintiff claims she was unlawfully arrested and subjected to excessive force. Defendants City of Sandy Springs and Officer Ryan Gehricke move to dismiss. (Dkt. 23.) Defendant Jason Dwain Anderson also moves to dismiss. (Dkt. 24.) The Court grants Defendants' motions.

## I.    Background

In March 2017, Plaintiff went to an LA Fitness gym to workout. (Dkt. 22 ¶ 13.) She parked her car, went into the gym, and returned to the parking lot. (*Id.* ¶ 13–14.) As she walked to her car, a police officer, Officer Ryan Gehricke, approached her. (*Id.* ¶ 15.) Defendant Jason Dwain Anderson had previously asked Officer Gehricke for help finding

someone who had hit his car.  (*Id.* ¶ 16.)  Mr. Anderson showed Officer Gehricke a picture of a black Lexus touching or possibly on top of his car. (*Id.*; Dkt. 23-2.)[1]  Officer Gehricke ran the tag of the Lexus and identified Yolanda Duncan as its owner.  (Dkt. 22 ¶ 17.)

Defendant Gehricke asked Plaintiff if she was Ms. Duncan and she said yes.  (*Id.* ¶ 18.)  She also confirmed that she owned the vehicle in contact with Mr. Anderson's vehicle.  (*Id.* ¶ 19.)  Defendant Gehricke asked to see her license, but Plaintiff refused to show it.  (*Id.* ¶ 23.) Plaintiff tried to explain to Officer Gehricke that she did not hit Mr. Anderson's vehicle, but he did not listen.  (*Id.* ¶ 20.)  He got angry and began to scream at her.  (*Id.*)  He said, "[p]lease don't make me make this criminal!  It's civil right now!"  (*Id.* ¶ 21.)  He walked over to this patrol car and radioed another police officer to ask if he could arrest Plaintiff. (*Id.* ¶ 22.)  That officer, who Plaintiff sues as Defendant John Doe, told Officer Gehricke that he could.  (*Id.* ¶¶ 22, 27.) Officer Gehricke then

---

[1] Plaintiff referred to the photograph in her complaint, and Defendant Gehricke attached it to his motion to dismiss.  The photograph matches Plaintiff's description.  In other words, the contents of the photograph are not in dispute.  Since the document is also central to the complaint, the Court may consider it.  *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

arrested Plaintiff for her failing to produce her driver's license.  (*Id.* ¶ 25.)

A warrant was issued after her arrest charging her with hit and run and

obstruction.  (*Id.*)  Plaintiff claims Defendant Gehricke injured her during

her arrest.  (*Id.* ¶ 29.)  Fulton County Jail refused to accept her, and the

police transported her to Northside Hospital.  (*Id.*)  In the weeks after the

arrest, Travelers Insurance Company investigated the case.  (*Id.* ¶ 32.)

It found the accident was not Plaintiff's fault.  (*Id.*)

Plaintiff sues in six counts.  In Count One, she claims Defendants

Gehricke and John Doe arrested her without probable cause.  In Count

Two, Plaintiff brings a federal § 1983 malicious prosecution claim.  She

claims Defendants Gehricke and John Doe maliciously caused a criminal

prosecution against her, even though they knew there was no probable

cause to arrest her.  In Count Three, Plaintiff claims Defendant City of

Sandy Springs has municipal liability under the theories of respondeat

superior, failure to train, and a decision by a final policy maker.  In Count

Four, Plaintiff brings a state law malicious prosecution claim.  She claims

Defendants Gehricke and John Doe arrested her when they should have

known probable cause did not exist.  She claims Defendant Anderson

caused the arrest by giving the officers false information.  In Count Five,

Plaintiff claims Defendant Gehricke used excessive force when arresting her.  In Count Six, Plaintiff brings a First Amendment Retaliation claim against Defendants Gehricke and John Doe.  She claims Defendant Gehricke only arrested her because she claimed she did not hit another car.

## II.  Standard of Review

A court may dismiss a pleading for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999).

## III.  Discussion

### A.  Claims Against Officer Gehricke

#### 1.  *Younger* Abstention

In *Younger v. Harris*, 401 U.S. 37, 45 (1971), the Supreme Court held that a federal court should refrain from interfering with a pending state court criminal proceeding when the plaintiff seeks injunctive or declaratory relief.  A federal court should abstain under *Younger* when (1) there is an ongoing state criminal proceeding; (2) the proceeding implicates an important state interest; and (3) there is an adequate opportunity to raise a constitutional challenge in the state court proceeding.  *See Chen ex rel. V.D. v. Lester*, 364 F. App'x 531, 535 (11th Cir. 2010).  Officer Gehricke claims the Court should abstain under *Younger* because the Fulton County Solicitor's Office is still investigating the charges against Plaintiff.  Plaintiff, however, filed a notice of dismissal of state charges against her.  (Dkt. 38-1.)  There thus appears to be no ongoing state criminal proceeding, and the Court will not abstain.

## 2.    Federal Claims & Qualified Immunity

"Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (internal quotation marks omitted).  So "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).  Qualified immunity allows officials to "carry out their discretionary duties without the fear of personal liability or harassing litigation."  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  When properly applied, qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law."  *al-Kidd*, 563 U.S. at 743 (internal quotation marks omitted).

Qualified immunity may attach only when the officer is "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Grider v. City of Auburn*, 618 F.3d 1240, 1254 n.19 (11th Cir. 2010).  A public official acts within the scope of his discretionary authority where the acts complained of were "undertaken

6

pursuant to the performance of his duties and within the scope of his authority." *See Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir. 1988). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194. There seems to be no question that Defendant Gehricke acted within the scope of his discretionary authority when arresting Plaintiff. *See, e.g.*, *Wate v. Kubler*, 839 F.3d 1012, 1018 (11th Cir. 2016) (holding that officers acted within discretionary authority when arresting suspect). Plaintiff, thus, has the burden of showing that qualified immunity is unavailable to her.

The qualified immunity analysis presents two questions: first, whether the allegations taken as true establish the violation of a constitutional right; and second, if so, whether the constitutional right was clearly established when the violation occurred. *Hadley v. Gutierrez,* 526 F.3d 1324, 1329 (11th Cir. 2008). These distinct questions "do not have to be analyzed sequentially; if the law was not clearly established, [the court] need not decide if the [d]efendants actually violated the [plaintiff's] rights, although [the court is] permitted to do so." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011). The burden thus lies

with Plaintiff to show that Defendant Gehricke's actions violated a constitutional right and that the right was clearly established at the time of her arrest.  *See Hadley*, 526 F.3d at 1329.

> ### a. False Arrest/Unlawful Seizure (Count 1) & Malicious Prosecution (Count 2)
>
> #### i. Violation of a Constitutional Right

Plaintiff claims Defendant Gehricke violated her constitutional rights by arresting her without probable cause, thus subjecting her to an unlawful seizure and malicious prosecution.  Both Plaintiff's unlawful seizure and malicious prosecution claims fail if Defendant Gehricke had probable cause to arrest her.  *See Wood v. Kelser*, 323 F.3d 872, 878 (11th Cir. 2003) ("An arrest does not violate the Fourth Amendment if a police officer has probable cause for the arrest."); *Grider*, 618 F.3d at 1256 ("[T]he existence of probable cause defeats a § 1983 malicious prosecution claim.").  An officer has probable cause to arrest "if the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Carter v. Butts Cty.*, 821 F.3d 1310, 1319 (11th Cir. 2016) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220,

1226 (11th Cir. 2004)); *see also Boyd v. State*, 658 S.E.2d 782, 784 (Ga. Ct. App. 2008) (finding probable cause "if, considering the totality of the circumstances, at the time of arrest he had a reasonable belief that the defendant had committed a crime in his presence or within his knowledge" (internal quotation marks omitted) (alterations adopted)).

The test for qualified immunity, however, is not whether the officer actually had probable cause to support the arrest. The test is whether *arguable* probable cause exists. In other words, "[e]ven without actual probable cause, . . . a police officer is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff." *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018). Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the [defendant] *could* have believed that probable cause existed to arrest." *Id.* (emphasis added) (citing *Redd v. City of Enterprise*, 140 F.3d 1378, 1383–84 (11th Cir. 1998)). Arguable probable cause provides protection from both Fourth Amendment claims for false arrest and First Amendment claims stemming from an arrest. *Id.* at 1298; *see also Wilkerson v. Seymour*, 736 F.3d 974, 979 (11th Cir. 2013) ("[A]n arrest may be for a different crime from the one for which

probable cause actually exists, but arguable probable cause to arrest for *some* offense must exist in order for officers to assert qualified immunity from suit." (citations omitted)).

Defendant Gehricke claims he had probable cause to arrest Plaintiff for her refusal to show her license and her failure to notify Mr. Anderson about the car crash. The Court agrees. First, Plaintiff did not notify Mr. Anderson of the collision, thus violating section 40-6-271 of the Georgia Code. That section requires a driver that collides with an unattended vehicle to "immediately stop and [ ] then and there" provide the driver's name through either locating the driver of the unattended vehicle or leaving notice in a conspicuous place.[2] O.C.G.A. § 40-6-271(a). Failure to comply is a misdemeanor. § 40-6-271(b).

Defendant Gehricke was investigating a car crash in the LA Fitness parking lot. He had a picture of a car touching or on top of Mr. Anderson's car. He determined Plaintiff was the registered owner and then, when

---

[2] The statute states, "[t]he driver of any vehicle which collides with any vehicle which is unattended shall immediately stop and shall then and there either locate and notify the operator or owner of such vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle or shall leave in a conspicuous place on the vehicle struck a written notice giving the name and address of the driver and the owner of the vehicle doing the striking." O.C.G.A. § 40-6-271(a).

he spoke with her, Plaintiff confirmed her identity.   He also knew Plaintiff had not notified Mr. Anderson of the collision or left a note with her name and address in a conspicuous place.   In *Souder v. State*, 687 S.E.2d 594, 598 (Ga. Ct. App. 2009), the Georgia Court of Appeals determined similar information established probable cause for an arrest. In that case, "the evidence established that, prior to arresting [the suspect], the officer had obtained information from a witness that [the suspect] had engaged in a 'hit and run' incident by striking an unattended parked vehicle."   *Id.*   "[That] information authorized the officer to arrest [the suspect] for failing to comply with his duty upon striking an unattended vehicle."   *Id.* (citing O.C.G.A. § 40-6-271(a)).   The same is true here.   Defendant Gehricke had probable cause to arrest Plaintiff for violating section 40-6-271(a) of the Georgia Code.   In *Souder*, the witness actually identified the suspect as the driver of the vehicle while Mr. Anderson could not put Plaintiff in the car at the time of the alleged accident.   But, Defendant Gehricke had other evidence available to him, including the fact that Plaintiff came out of the gym alone, admitted it was her car, and never alleged someone else was driving. That he did not have an eye witness does not preclude probable cause, let

11

alone arguable probable cause.  Similarly, the fact that Mr. Anderson's car suffered only minor damage does not preclude a finding of probable cause as the statute requires a party to leave a note upon striking a car, without any requirement of damage.

Plaintiff argues section 40-6-271 only creates a duty to report and does not creates a duty to display a driver's license.  She claims she complied with the statute by confirming her name and ownership of the car.  She also argues that it is incorrect to say that she did not stop because she saw Mr. Anderson before she left.  The Court disagrees.  The statute instructs a driver that strikes an unattended vehicle to immediately locate the driver of the car or to leave notice in a conspicuous place.  By her own allegations, Plaintiff did not give notice immediately, as she went inside to workout.  She thus did not comply with her duty to report.  Indeed, she never provided notice.  Answering to a police officer's inquiry is not the same as providing immediate notice.

Plaintiff claims she told Defendant Gehricke that she did not hit Mr. Anderson's car.  But an officer "is under no obligation to give any credence to a suspect's story." *Williams v. City of Homestead*, 206 F. App'x 886, 888–89 (11th Cir. 2006).  In fact, it is irrelevant whether

Officer Gehricke believed Plaintiff was innocent because subjective beliefs "play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996); *Gill v. Judd*, 941 F.3d 504, 517 (11th Cir. 2019) ("Probable cause is an objective standard.").

Defendant Gehricke also had probable cause to arrest her for obstruction. Section 16-10-24 of the Georgia Code states, "a person who knowingly and willingly obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." Defendant Gehricke was investigating a potential hit and run. He knew that the car was Plaintiff's and so, as a part of his investigation, he asked her to see her identification. Plaintiff's refusal to show her license provided probable cause to believe she had obstructed his investigation. Defendant Gehricke points to case law holding that a refusal to obey an officer's instructions to "receive certain relevant documents" establishes probable cause for obstruction. For instance, in *Draper v. Reynolds*, 369 F.3d 1270, 1276 (11th Cir. 2004), a police officer pulled over a truck. The police officer asked for the truck driver's log book and bill of lading, and the truck driver refused to give them. *Id.* at

1273.  The Eleventh Circuit found, "[b]y repeatedly refusing to comply with [the police officer's] reasonable instructions, and by acting belligerently and confrontationally, [the truck driver] hindered [the police officer] in completing the traffic stop."  *Id.* at 1277.  The court determined "[the police officer] had ample probable cause to arrest [the truck driver] for violating Ga. Code Ann. § 16-10-24."  *Id.*

This Court acknowledges that the obstruction in *Draper* was perhaps more severe than here, but the principle remains the same — refusing to provide an officer with identification when that identification is required for an investigation is arguably obstruction.  Plaintiff says she had confirmed her name, which was all that Defendant Gehricke needed for his investigation.  But Defendant Gehricke may have wanted to verify her name or address, which she was required to leave by state law.  Put simply, Plaintiff did not get to define how Defendant Gehricke carried out his lawful duties.  Defendant Gehricke thus had probable cause to arrest Plaintiff for obstruction.  Or, at least, he had arguable probable

cause to arrest Plaintiff for obstruction.[3] As a result, both Plaintiff's unlawful arrest and malicious prosecution claims fail.[4]

Because there was no constitutional violation, the Court need not discuss whether the law was clearly established. *See Durruthy v. Pastor*, 351 F.3d 1080, 1094–95 (11th Cir. 2003) ("Because we find no constitutional violation, we need not address whether the constitutional right at issue was clearly established.").

---

[3] Defendant Gehricke also claims Plaintiff's refusal to show her license violated section 40-5-29(b) of the Georgia Code, which requires a licensee to show their license upon a law enforcement officer's demand: "[e]very licensee shall display his or her license upon the demand of a law enforcement officer." That section, however, appears to apply when an officer has pulled over a vehicle's driver. Section 40-5-29(a) states, "[e]very licensee shall have his or her driver's license in his or her immediate possession at all times *when operating a motor vehicle*." (emphasis added). That statute may address this situation, in which a driver potentially hit an unattended vehicle and left the scene. The statute may, however, be intended for a situation in which the officer pulled over a driver. The parties did not point the Court to any case law showing that statute's breadth. And either way, Plaintiff's refusal to show her license was obstruction. Since the Court need not make a finding, the Court does not decide that issue either way.

[4] Plaintiff also sues Defendant John Doe for unlawful seizure and malicious prosecution, Counts I and II. Her claims against John Doe rest on the same basis as her claims against Defendant Gehricke. Because the claims against Defendant Gehricke fail, the claims against Defendant John Doe fail.

### b.   Excessive Force (Count 5)

The Fourth Amendment's "reasonableness" standard governs excessive force claims. *Graham v. Connor*, 490 U.S. 386, 397 (1989). That standard turns on "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intention or motivation." *Id.*  To determine reasonableness, courts examine several factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Lee*, 284 F.3d at 1198 (quoting *Graham*, 490 U.S. at 396).  "[S]ome use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." *See Durruthy*, 351 F.3d at 1094.  "[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Id.* (quoting *Nolin v. Isbell,* 207 F.3d 1253, 1257 (11th Cir. 2000)). "An officer is entitled to qualified immunity from an excessive force claim unless application of the excessive force standard would inevitably lead every reasonable [official] in  [the officer's] position to

conclude the force was unlawful." *Jones v. City of Dothan*, 121 F.3d 1456, 1458 (11th Cir. 1997) (alterations in original) (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993)).

In large part, Plaintiff's excessive force claim fails because her allegations are conclusory.  She alleges that "[d]uring the process of effectuating the arrest Officer Gehricke injured Ms. Duncan" and that she suffered injuries as a result of his "application of excessive force." (Dkt. 22 ¶ 29.)  She further alleges that, even if some force was appropriate, the force he used was "grossly disproportionate to that necessary to effect the arrest."  (*Id.* ¶ 68.)  She also claims her injuries were severe enough that Alpharetta-Fulton County Jail refused to accept her, and the police had to bring her to the hospital.   But, she includes no allegations about how she was injured, what Defendant Gehricke allegedly did to hurt her, or what she was doing at the time.  The Court thus does not have enough detail to evaluate her claim that Defendant Gehricke used excessive force.  *See Carter v. DeKalb Cty.*, 521 F. App'x 725, 728 (11th Cir. 2013) ("[D]iscovery follows the filing of a well-pleaded complaint.  It is not a device to enable the plaintiff to make a case when

his complaint fails to state a claim." (citation and quotation marks omitted)).

Plaintiff has not alleged facts sufficient to show that Defendant Gehricke used excessive force, let alone to satisfy her burden of showing he is not entitled to qualified immunity. Indeed, the Eleventh Circuit has found more force than what Plaintiff appears to allege here not to be excessive. For instance, in *Nolin*, a seventeen-year-old was in a play fight with a friend. 207 F.3d at 1255. A police officer, thinking it was a real fight, "grabbed him from behind by the shoulder and wrist, threw him against a van three or four feet away, kneed him in the back and pushed his head into the side of the van, searched his groin area in an uncomfortable manner, and handcuffed him." *Id.* In *Durruthy*, as a reporter followed the command to walk from the street to the sidewalk, a police officer "grabbed him from behind" and "pulled [him] onto the ground, while struggling to pin his arms behind him and handcuff him." 351 F.3d at 1085. The Eleventh Circuit found neither of those uses of force excessive. And in *Jones v. City of Dothan,* two police officers arrested a non-resisting suspect who told them he had recently experienced a stroke. 121 F.3d at 1458. The officers "slammed [him]

18

against a wall, kicked his legs apart, required him to put his arms above his head," and tore his pants. *Id.* The Eleventh Circuit found that force "may have been unnecessary, [but] the actual force used and the injury inflicted were both minor in nature." *Id.* at 1460. "Given such variables, the application of the excessive force standard would not inevitably lead an official in [the police officer's] position to concluded that the force was unlawful." *Id.* at 1460–61. The uses of force in those cases were more severe than what Plaintiff has alleged here.

Plaintiff also claims the force was excessive because she was arrested for a minor charge. The Court agrees that the circumstances around her arrest were not urgent. But Officer Gehricke could use some force in making an arrest and she has not alleged facts showing the force he allegedly used exceeded constitutional limits. Plaintiff's excessive force claim thus fails.

And even if the force were excessive, Defendant Gehricke would be entitled to qualified immunity. As explained above, police officers are entitled to qualified immunity unless application of the standard would inevitably lead every reasonable official in the officer's position to conclude the force was unlawful. *Id.* at 1458. Plaintiff's allegations do

not meet this standard.  Plaintiff has not pointed to any case law that would have put Defendant Gehricke on notice of a constitutional violation.  To overcome qualified immunity, the plaintiff bears the burden of showing that a defendant violated clearly established law.  *See Johnson v. Conway*, 688 F. App'x 700, 706 (11th Cir. 2017).  A plaintiff typically does this by pointing to "materially similar precedent from the Supreme Court, [the Eleventh Circuit], or the highest state court in which the case arose." *Gates*, 884 F.3d at 1296.  While the facts of the case need not be identical, "the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau,* 642 F.3d 999, 1013 (11th Cir. 2011).  In the Amended Complaint and Response to the Motion to Dismiss, Plaintiff points the Court to no caselaw showing Defendant Gehricke used excessive force.  Plaintiff cites only two cases, *Durruthy v. Pastor*, 351 F.3d 1080, and *Lee v. Ferraro*, 284 F.3d 1188.  *Lee* involved a police officer ripping a driver out of a car without warning and then slamming the driver's head on the car's trunk.  284 F.3d at 1190–91.  It is not factually similar to this case and thus would not have put Defendant Gehricke on notice that his conduct violated clearly established law.  And as explained above, *Durruthy* actually supports

Defendant's Motion to Dismiss.  It certainly does not clearly establish that Defendant Gehricke's alleged conduct was unconstitutional. Plaintiff has thus failed to show that Defendant Gehricke's conduct violated clearly established law.[5]

### c.    First Amendment Retaliation

Plaintiff claims that, fundamentally, Defendant Gehricke only arrested her because she claimed she did not hit the other car.  As a result, he arrested her in retaliation for speaking in violation of her First Amendment Rights.  In *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019), the Supreme Court recognized that probable cause generally bars a false arrest claim but there is "a narrow qualification . . . for circumstances where officers have probable cause to make arrests, but typically exercise that discretion not to do so."  "In such cases, an unyielding requirement to show the absence of probable cause could pose a risk that some police officers may exploit the arrest power as a means of suppressing speech." *Id.* (internal quotation marks omitted).

---

[5] A plaintiff can also show the law is clearly established by pointing to broad principles of law or explicit statutory or constitutional statements. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1209 (11th Cir. 2007). Plaintiff has not attempted to do either.

> For example, at many intersections, jaywalking is endemic but rarely results in arrest.  If an individual who has been vocally complaining about police conduct is arrested for jaywalking at such an intersection, it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest.

*Id.*  So, to bring a retaliatory arrest claim when probable cause exists, a plaintiff must present "objective evidence that [she] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  *Id.*  In the Amended Complaint, Plaintiff claims "that no person has been arrested in a situation where they were suspected of unknowingly causing four scratches to a parked vehicle and they were not engaged in the type of protected speech [Plaintiff] was engaged in."  (Dkt. 22 ¶ 76.)  That may be true, but it misses the thrust of why Defendant Gehricke arrested her.  Officer Gehricke had probable cause to arrest Plaintiff, not only for hit and run, but also obstruction.  The obstruction charge implicates not just her speech, but her cooperation with a police investigation.  That cooperation differs from the jaywalking example.  Obstruction creates not "a risk that some police officers may exploit the arrest power as a means of suppressing speech,"

but a risk that police cannot perform their duties. *Nieves*, 139 S. Ct. at 1727. Plaintiff's First Amendment retaliation claim thus fails.[6]

Even if it did not, the Supreme Court had not yet issued *Nieves* when Defendant Gehricke arrested Plaintiff. As a result, "[s]ince there was no consensus view at the time of the actions in this case, even if there was a First Amendment violation for retaliatory arrest notwithstanding the fact [Defendant Gehricke] had probable cause to arrest [Plaintiff], [Defendant Gehricke] is entitled to qualified immunity." *Whittaker v. Munoz*, No. 1:17-cv-01983, 2019 WL 4194499, at *5 (D.D.C. Sept. 4, 2019).

### 3.    State Law Malicious Prosecution

Under Georgia law, "[a] criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action." O.C.G.A. § 51-7-40. "A person seeking to recover for malicious prosecution must show, among other things, that the prosecution was instigated without probable cause and with malice." *Carly Ray Indus., Inc. v. Mays*, 841 S.E.2d 100, 102 (Ga. Ct. App. 2020). "The elements of malicious

---

[6] This claim fails against Defendant John Doe for the same reasons.

prosecution are: (1) prosecution of a criminal offense; (2) the prosecution instigated under a valid warrant, accusation, or summons; (3) termination of the prosecution in the favor of the plaintiff; (4) malice; (5) want of probable cause; and (6) damage to the plaintiff." *Jackson v. Kmart Corp.*, 851 F. Supp. 469, 472 (M.D. Ga. 1994).  Plaintiff's claim for malicious prosecution fails because Officer Gehricke had probable cause to arrest her.[7]

### B.   Claims Against Defendant City of Sandy Springs

Plaintiff claims Defendant City of Sandy Springs has municipal liability for her injuries.  To establish municipal liability under § 1983, a plaintiff must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).  Her federal claims against Defendant City of Sandy Springs fail because she has not alleged a constitutional violation. *See Willis v. Mock*, 600 F. App'x 679, 685 (11th Cir. 2015) ("[A]n inquiry into a governmental entity's custom or policy is relevant only

---

[7] Plaintiff's state law malicious prosecution claim also fails against Defendant Anderson for the same reason — Defendant Gehricke had probable cause to arrest her.  Because that was the only claim she made against Defendant Anderson, the Court grants his Motion to Dismiss (Dkt. 24).  The claim also fails against Defendant John Doe.

when a constitutional deprivation has occurred." (quotation marks and citation omitted)).

Her state law claim (malicious prosecution) against Defendant City of Sandy Springs also fails because she has not shown an underlying tort. *See Cotton States Mut. Ins. Co. v. Kinzalow*, 634 S.E.2d 172, 174 n.3 (Ga. Ct. App. 2006) ("In order to succeed in a claim of respondeat superior against an employer, one must first prove the existence of an underlying tort, and then establish that the employee was acting in furtherance of the employer's business and that he was acting within the scope of the employer's business when the tort was committed."). Defendant City of Sandy Springs also has sovereign immunity. *See* O.C.G.A. § 36-33-3 ("A municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law.").

## IV.   Conclusion

The Court **GRANTS** Defendants City of Sandy Springs and Ryan Gehricke's Motion to Dismiss (Dkt. 23). The Court **GRANTS** Defendant Jason Dwain Anderson's Motion to Dismiss (Dkt. 24). The Court **DISMISSES** the claims against Defendant John Doe.

**SO ORDERED** this 14th day of September, 2020.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE