[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13867

_____

YOLANDA DUNCAN,

Plaintiff-Appellant,

*versus*

CITY OF SANDY SPRINGS,
OFFICER RYAN GEHRICKE,
in his individual capacity,
OFFICER JOHN DOE,
in his individual capacity,
JASON DWAIN ANDERSON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cv-01129-MLB

_____

Before WILSON and LAGOA, Circuit Judges, and MARTINEZ,* District Judge.

PER CURIAM:

Yolanda Duncan appeals from the district court's dismissal of her amended complaint against the City of Sandy Springs, Officer Ryan Gehricke, and Jason Anderson for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Accepting all allegations in Duncan's complaint and taking all inferences in her favor—as we must—we conclude that Duncan has pleaded sufficient facts to state a plausible claim for false arrest and malicious prosecution under 42 U.S.C. § 1983. Duncan has also pleaded sufficient facts to show that Leach is not entitled to qualified immunity at this stage of the litigation.

## I.        FACTUAL AND PROCEDURAL BACKGROUND[1]

March 13, 2017, began as a normal day for Yolanda Duncan. She drove to a LA Fitness gym location, parked her car in the gym's parking lot, and went inside the gym to workout. Things took an

---

* Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida, sitting by designation.

[1] Because the procedural posture of this case involves a Rule 12(b)(6) motion, we must accept the allegations of plaintiff's amended complaint as true. *See Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (en banc), *abrogated in part by* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 561–63 (2007). The facts set forth in this section of the opinion therefore are taken from the amended complaint and construed in the light most favorable to the plaintiff.

unexpected turn when a Sandy Springs police officer approached her leaving the gym.

After finishing her workout, Duncan exited the gym and began walking towards her case when Officer Gehricke confronted her and asked her if she was Yolanda Duncan. After Duncan confirmed her identity and identified her vehicle, Officer Gericke accused her of scratching another car in the parking lot. But Duncan knew this could not be true—she specifically remembered her surroundings and *not* hitting another car while she parked (and, in fact, an expert investigation by Duncan's insurance carrier later concluded she had not caused the accident). Unbeknownst to Duncan, while she was in the gym, Jason Anderson had enlisted Officer Gehricke to help him track down the driver that allegedly stuck his unattended car in the LA Fitness parking lot. He had apparently taken a photograph of the cars in contact and provided Officer Gehricke with a license plate number. Running the plate revealed Duncan as the owner of the striking car.

Duncan tried to have a civil discussion and explain to both men that she did not think she hit anyone's car, but Officer Gehricke quickly became irate. He screamed at Duncan and expressed his displeasure at her denying fault. Bystanders who were disturbed by the Officer's behavior and tried to intervene were rebuffed. Duncan continued to vehemently deny that she was in any accident or that she damaged Anderson's car in any way.

Officer Gehricke eventually asked to see Duncan's driver's license. While she denies refusing his request, she wondered—

having already provided her name and identifying her vehicle, and knowing Officer Gehricke had already run her license plate—what purpose producing her license could possibly serve.  It is not clear from the complaint whether she ever produced her license, although Officer Gehricke claims she did not.

 As tensions escalated, Officer Gehricke threated criminal action, exclaiming, "Please don't make this criminal!  It's civil right now!"  Soon after, he walked to his patrol car to radio an unknown officer ("Officer Doe") for permission to arrest her.  With this officer's blessing, Officer Gehricke arrested Duncan on charges of hit-and-run, *see* O.C.G.A. § 40-6-270, and obstruction, *see id*. § 16-10-24(a), for failing to produce her driver's license.[2]  Warrants were subsequently issued for both charges.

Those familiar with Georgia law may find these charges surprising.  For one, the hit-and-run law Duncan supposedly violated only applies to the striking of attended vehicles.  But Anderson reported that his car was struck unoccupied in the parking lot.  Moreover, as to the obstruction charge, there is no state law that requires individuals not presently driving to produce their license at the request of an officer, and no law that allows officers to request as much.  *Cf. id*. § 40-6-271 (delineating the duty upon a driver of a

---

[2] The arrest did not go smoothly.  Officer Gehricke injured Duncan so severely that the county jail refused to accept her, and she was transported to the hospital with injuries to her back, neck, and hip.  Duncan denies resisting arrest in any way.  However, Duncan does not appeal the district court's dismissal of her § 1983 excessive force claim.

vehicle striking an unattended vehicle).  Duncan had to hire an at-
torney and appear before the Sandy Springs Municipal Court fol-
lowing her arrest.

Based on the foregoing facts, the first amended complaint
included six counts: federal § 1983 claims against Officers Gehricke
and Doe for unlawful seizure, malicious prosecution, excessive
force, and First Amendment retaliation; a state law malicious pros-
ecution claim against Gehricke, Doe, and Anderson; and municipal
liability claims against the City itself.

The City of Sandy Springs and Officer Gehricke together
filed a Rule 12(b)(6) motion to dismiss the amended complaint.  An-
derson did the same.

The district court granted both motions and dismissed the
complaint.  It concluded that Duncan's federal unlawful seizure
and malicious prosecution claims failed because Officer Gehricke
had probable cause to arrest her.  Her state law malicious prosecu-
tion claim failed for the same reason.  Her federal excessive force
claim failed because her allegations were conclusory.  Her First
Amendment retaliation claim failed because Officer Gehricke had
probable cause to arrest her and, even if he did not, he would not
have violated any clearly established right.  Finally, her claims
against the City of Sandy Springs failed because she had not alleged
an underlying tort or constitutional violation.  The district court
also noted that the City has sovereign immunity.  Duncan appeals
all except the dismissal of her § 1983 excessive force claim.

In its deliberation, the district court considered a photograph attached to the motion to dismiss filed by Sandy Springs and Officer Gehricke, which showed two black cars in contact. The district court claimed that its consideration of the photograph was proper because it matched Duncan's own description and it was "central" to her complaint.

This appeal ensued.

## II.        STANDARD OF REVIEW

"We review *de novo* the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim, accepting the complaint's allegations as true and construing them in the light most favorable to the plaintiff." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1335 (11th Cir. 2012) (quoting *Cinotto v. Delta Air Lines, Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012)).

Further, we review *de novo* a district court's denial of qualified immunity at the motion to dismiss stage. *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019). Like the district court, we accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.* When a qualified immunity defense is denied at the motion to dismiss stage, "appellate review is 'limited to the four corners of the complaint,'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)), which "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face," *Echols v. Lawton*, 913 F.3d 1313,

1319 (11th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.        ANALYSIS

Cabining our review to the four corners of Duncan's complaint, taking all its allegations as true, and drawing all reasonable inferences in favor of Duncan, we conclude that Duncan has stated a plausible claim that Officer Gehricke lacked probable cause to arrest or prosecute her.[3] "[P]robable cause requires that 'the facts and circumstances *within the officer's knowledge,* of which he or she has *reasonably trustworthy information,* would cause a *prudent* person to believe, *under the circumstances shown,* that the suspect has committed . . . an offense.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 n.11 (11th Cir. 2004) (quoting *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998)), *abrogated on other grounds by Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020)

### A. The Qualified Immunity Standard

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[3] Duncan's false arrest and malicious prosecution claims implicate slightly different standards. A false arrest claim requires a plaintiff to show that there was no probable cause to arrest him for "any crime." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). A malicious prosecution claim requires a plaintiff to show that there was no probable cause for one or more of the charged offenses. *See id.* at 1157, 1165. These differences, however, do not matter at this procedural point in the case.

reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be, as it was in this case, raised and considered on a motion to dismiss." *St. George*, 285 F.3d at 1337.

To assert a qualified immunity defense, a government official must first establish that he was acting within his discretionary authority at the time of the challenged conduct. *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). Because there is no dispute Officer Gehricke was acting within his discretionary authority, the burden shifts to Duncan to show that: (1) Officer Gehricke "violated a constitutional right"; and (2) the "right was clearly established at the time of the incident." *Id.* To meet her burden at this stage in the litigation, Duncan's complaint must plausibly allege that Officer Gehricke did not have probable cause to arrest her. *See Carter v. Butts County*, 821 F.3d 1310, 1319 (11th Cir. 2016) ("By now it is well established that '[a] warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim.'" (quoting *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996))).

The presence of probable cause will defeat § 1983 claims for unlawful seizure and malicious prosecution, as well as claims for malicious prosecution brought under Georgia law. *See Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003) ("An arrest does not violate the Fourth Amendment if a police officer has probable cause for

the arrest."); *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010) ("[T]he existence of probable cause defeats a § 1983 malicious prosecution claim."); *Holmes v. Achor Ctr., Inc.*, 531 S.E.2d 773, 775 (2000) ("The existence of probable cause is an absolute defense to a claim of malicious prosecution [brought under O.C.G.A. § 51–7–40]."). Duncan's First Amendment retaliation claim also turns on probable cause. *See DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1297 (11th Cir. 2019) ("[T]he presence of probable cause will . . . generally defeat a § 1983 First Amendment retaliation claim for an underlying retaliatory arrest . . . .").

"While an officer who arrests an individual without probable cause violates the Fourth Amendment," *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007), an officer needs only "arguable" probable cause to invoke qualified immunity, *Grider*, 618 F.3d at 1257. "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Skop*, 485 F.3d at 1137 (quoting *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002)). Arguable probable cause exists where "reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendant could have believed that probable cause existed to arrest the plaintiff." *Id.* (emphasis removed) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)).

### B. Probable Cause to Arrest Duncan

The district court dismissed Duncan's § 1983 claims for unlaw seizure and malicious prosecution because it concluded Officer Gehricke had probable cause—or, at least, arguable probable cause—to arrest her and was thus protected from suit by qualified immunity. The district court dismissed Duncan's state law malicious prosecution claim because it found Gehricke had actual probable cause for arrest. Taking the facts alleged in the complaint as true and construing them in the light most favorable to Duncan, these determinations were in error.

For purposes of unlawful seizure, the "validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.*, 956 F.2d 1112, 1119 n.4 (11th Cir.1992). Thus, the district court considered the original charges for her arrest—hit-and-run under O.C.G.A. § 40-6-270 and obstruction under O.C.G.A. § 16-10-24)—as well as O.C.G.A. § 40-6-271, titled "Duty upon striking unattended vehicle," which appears to have been later added to Duncan's charges.

Turning first to Georgia's hit-and-run law, O.C.G.A. § 40-6-270 applies to "[t]he driver of any vehicle involved in an accident resulting . . . in damage *to a vehicle which is driven or attended by any person*." *Id.* § 40-6-270(a) (emphasis added). Officer Gehricke could not have had even arguable probable cause to arrest Duncan under this statute where it was undisputed that Anderson's car was unattended when it was allegedly struck in the parking lot.

Next, Georgia's obstruction statute reads, in relevant part: "[A] person who knowingly and willfully obstructs or hinders any law enforcement officer . . . in the lawful discharge of his or her official duties shall be guilty of a misdemeanor." *Id*. § 16-10-24(a). There is no Georgia law that required Duncan to produce a driver's license under the circumstances of this case. *Cf. id*. § 40-5-29(a)–(b)(1) (requiring a licensee to carry his license while operating a motor vehicle and to display his or her license upon the demand of a law enforcement officer). However, the district court determined that Duncan's "refusal to show her license provided probable cause to believe she had obstructed [Officer Gehricke's] investigation," citing our decision in *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004). But that case was decided on summary judgment with the benefit of video evidence that the defendant, in addition to refusing to retrieve the documents requested by the officer, "acted in a confrontational and agitated manner, paced back and forth, and repeatedly yelled at [the officer]." *Id*. at 1276–77. That case is clearly distinguishable. The facts alleged in the complaint, taken in the light most favorable to Duncan, do not permit finding that Officer Gehricke had even arguable probable cause to arrest Duncan for obstruction for failure to display her license.

Finally, Georgia law requires "[t]he driver of any vehicle which collides with any vehicle which is unattended" to "immediately stop" and, "then and there,"

> either locate and notify the operator or owner of such vehicle of the name and address of the driver and owner of the vehicle striking the unattended vehicle

> or shall leave in a conspicuous place on the vehicle
> struck a written notice giving the name and address
> of the driver and the owner of the vehicle doing the
> striking.

O.C.G.A. § 40-6-271(a).   The district court found that Officer
Gehricke had probable cause to arrest Duncan for violating
O.C.G.A. § 40-6-271 for refusing to show her license and failing to
notify Anderson about striking his car.   It relied on *Souder v. State*,
687 S.E.2d 594 (2009), in which the Georgia Court of Appeals con-
cluded probable cause existed where,

> the evidence established that prior to arresting
> Souder, the officer had obtained information from a
> witness that Souder had engaged in a "hit-and-run"
> incident by striking an unattended parked vehicle.
> This information authorized the officer to arrest
> Souder for failing to comply with his duty upon strik-
> ing an unattended vehicle.

*Id.* at 598.  Because *Souder* was on appeal from a denial of a motion
for new trial, the Georgia court had to uphold the trial court's find-
ings so long as there was "any evidence to support them."  *Id.* at
597.  The trial court's "findings of fact and credibility determina-
tions [had to] be accepted unless clearly erroneous," and the evi-
dence had to be viewed in the light most favorable to the jury's
verdict.  *Id.*

　　At this procedural stage, the error in the district court's
probable cause finding comes down to this: we are reviewing a mo-
tion to dismiss.  Duncan does not know—and cannot possibly

know without the benefit of discovery—what happened before Officer Gehricke approached her.  We do not know what Anderson told or showed Officer Gehricke or whether Officer Gehricke conducted any kind of investigation.  We do not even know the identity of the officer who gave Gehricke permission to arrest Duncan, let alone what was discussed during their exchange.  Thus, it is not yet possible to determine whether probable cause—or even arguable probable cause—existed in this case.

For these reasons, we hold that the dismissal of the § 1983 unlawful arrest and malicious prosecution and state law malicious prosecution claims against Officers Gehricke and Doe was improper at this stage in the litigation.  Gehricke may, of course, raise this qualified immunity defense again.  But as the case stands at the motion-to-dismiss stage, we conclude that the district court erred in finding that Officer Gehricke and Officer Doe were entitled to qualified immunity.

## C.  First Amendment Retaliation

Like § 1983 claims for unlawful arrest and malicious prosecution, the presence of probable cause will generally defeat a § 1983 First Amendment retaliation claim for an underlying retaliatory arrest.  *See DeMartini*, 942 F.3d at 1297.  *But see Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1953–54 (2018); *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).  The district court dismissed Duncan's § 1983 First Amendment retaliation claim because it concluded Officer Gehricke had probable cause to arrest her and that she did not properly allege facts to support she fit the narrow exception

articulated in *Nieves*, 139 S. Ct. at 1722.[4]  Because we have concluded the district court's probable cause determination was in error, and because it is undisputed that Officer Gehricke was acting within the scope of his discretionary authority, the burden is on Duncan to establish that Officer Gehricke violated her First Amendment rights and that those rights were clearly established. *Mercado*, 407 F.3d at 1156.

To show Officer Gehricke retaliated against her in violation of the First Amendment, Duncan must plausibly allege: (1) her speech was constitutionally protected; (2) "the defendant's retaliatory conduct adversely affected the protected speech"; and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).  Regarding prong two, there is no doubt that an arrest in "retaliation against private citizens for exercising their First Amendment rights [is] actionable." *Id*. at 1255.  Regarding prong three, we reverse the district court's probable cause

---

[4] In 2019, the Supreme Court held that although probable cause will generally defeat a retaliatory arrest claim, there is a narrow exception "for circumstances where officers have probable cause to make arrests, but typically exercise their discretion not to do so." *Nieves*, 139 S. Ct. at 1726–27.  *Nieves* "clearly established" for the first time that an arrest made with probable cause could nonetheless subject an officer to liability for First Amendment retaliation.  Duncan's complaint alleged that if Officer Gehricke had probable cause to arrest her, such probable cause could not bar her claim because she fits the narrow *Nieves* exception.  But Duncan was arrested in 2017, before the *Nieves* decision, and the law thus was not clearly established.  Therefore, if the Officers had probable cause to arrest her, it would bar her retaliatory arrest claim.

determination and take Duncan's allegation that Officer Gehricke arrested her for "steadfastly protesting her innocence, truthfully explaining to the officer what actually happened, and disputing [the] officer's version of events," as true. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[W]hen nonretaliatory grounds are in fact insufficient to provoke the adverse consequences . . . retaliation is subject to recovery as the but-for cause of official action offending the Constitution.").

Turning to prong one, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (striking down as unconstitutional an ordinance that prohibited speech that "in any manner . . . interrupt[s]" an officer). Individuals are free "verbally to oppose or challenge police action without thereby risking arrest." *Id.* at 462–63. "Speech is often provocative and challenging. . . . [But it] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest" *Id.* (alterations in original) (quoting *Terminiello v. Chicago,* 337 U.S. 1, 4 (1949). There are several narrow categories of unprotected speech, but mere verbal criticism or challenge of a police officer—as was alleged by Duncan—is not one of them. *See generally Virginia v. Black*, 538 U.S. 343 (2003) (true threats); *New York v. Ferber*, 458 U.S. 747 (1982) (child pornography); *Smith v. Daily Mail Publ'g Co.*, 443 U.S. 97 (1979) (privacy); *Zacchini v. Scripps-Howard Broad. Corp.*, 433 U.S. 562 (1977) (intellectual property); *Miller v. California*, 413 U.S. 15 (1973) (obscenity*);*

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) (defamation); *Chaplinksy v. New Hampshire*, 315 U.S. 568 (1942) (fighting words); *Schenck v. United States*, 249 U.S. 47 (1919) (incitement).

The right to be free from retaliation for such speech is clearly established. *See Nieves*, 139 S. Ct. at 1722 ("If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim." (quoting *Hartman*, 547 U.S. at 256 (2006)). Thus, we reverse the district court's dismissal of Duncan's First Amendment retaliation claim.

### D. State Law Malicious Prosecution Against Anderson

Duncan sued Anderson under Georgia's malicious prosecution statute, which reads, "A criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted shall give him a cause of action." O.C.G.A. § 51-7-40. The elements of a malicious prosecution claim are: "(1) prosecution for a criminal offense; (2) the prosecution instigated under a valid warrant, accusation, or summons; (3) termination of the prosecution in favor of the plaintiff; (4) malice; (5) want of probable cause; and (6) damage to the plaintiff." *Jackson v. Kmart Corp.*, 851 F. Supp. 469, 472 (M.D. Ga. 1994) (quoting *Medoc Corp. v. Keel*, 305 S.E.2d 134, 136 (Ga. Ct. App. 1983)).

Under Georgia law, where a reporting defendant (here, Anderson) "merely states what he believes, leaving the decision to prosecute entirely to the uncontrolled discretion of the officer, or

if the officer makes an independent investigation, or prosecutes for an offense other than the one charged by the defendant, the latter is not regarded as having instigated the proceedings." *Id.* (quoting *Melton v. LaCalamito*, 282 S.E.2d 393, 396 (Ga. Ct. App. 1981)). But if he was "the determining factor in inducing the officer's decision, or . . . gave information which he knew to be false and so unduly influenced the authorities, he may be held liable." *Id.* (quoting *Melton*, 282 S.E.2d at 396). Here, even viewing the facts alleged in the complaint in the light most favorable to Duncan, Anderson cannot be said to have been the "determining factor" in Officer Gehricke's decision to arrest her or to have "unduly influenced" him to do so. Even if Anderson falsely reported—as Duncan claims—that she scratched his car, Officer Gehricke's decision to arrest arose from his own interactions with Duncan and after talking to another officer. Thus, we affirm dismissal of the malicious prosecution claim against Anderson.

### E.  Municipal Liability

Duncan's complaint alleged that the City of Sandy Springs has municipal liability under the theories of (1) respondeat superior for its officers' violations of state law and (2) the *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), doctrine for failure to train and because there was a decision by a final policy maker to arrest Duncan or similarly situated individuals. The district court dismissed Duncan's *Monell* claim because she did not allege a constitutional violation. It dismissed her respondeat superior claim because she failed to alleged an underlying tort, and regardless, the City has sovereign

immunity. While we reverse as to the underlying constitutional and tort claims against the officers, we affirm dismissal of her claims against the City because she has failed to plausibly allege a cause of action.

Beginning with the state law claim of malicious prosecution, Georgia law provides that "[a] municipal corporation shall not be liable for the torts of policemen or other officers engaged in the discharge of the duties imposed on them by law." O.C.G.A. § 36-33-3. In her brief to this Court, Duncan did not contest the district court's conclusion that the City has sovereign immunity. She has waived the issue by failing to argue it on appeal. *See McGinnis v. Ingram Equip. Co.*, 918 F.2d 1491, 1496 (11th Cir. 1990) ("A party normally waives its right to argue issues not raised in its initial brief.").

Duncan also appeals the district court's dismissal of her federal municipal liability claims. Municipalities like the City may only be held liable under § 1983 if "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. Thus, a municipality can be held liable "on the basis of ratification when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority." *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016) (quoting *Matthews v. Columbia County*, 294 F.3d 1294, 1297 (11th Cir.2002). Liability can also be based on "a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F.3d 1332, 1342–43

(11th Cir. 1994).  A plaintiff may establish a policy or custom exists by showing a "persistent and wide-spread practice" and the government's actual or constructive knowledge of that practice.  *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).  Generally, "random acts or isolated incidents are insufficient to establish a custom or policy."  *Id.*

For this cause of action, Duncan's complaint merely states, "The City is also liable under the *Monell* doctrine due to its failure to provide proper training and because there was a decision by a final a final policy maker to arrest Ms. Duncan or conduct arrests in cases such as Ms. Duncan's."  Even viewing the facts alleged in the first amended complaint in the light most favorable to Duncan, her conclusory allegations fail to plausibly allege the police department had a pattern of arresting and prosecuting people without probable cause, or that there was any decision by a final policymaker. *See generally Connick v. Thompson*, 563 U.S. 51, 61–62 & n.7 (2011); *Knight ex rel. Kerr v. Miami-Dade County*, 856 F.3d 795, 820 (11th Cir. 2017).  For these reasons, we affirm dismissal of Duncan's claims against the City.

## IV.    CONCLUSION

Accordingly, we conclude that the district court erred in dismissing Duncan's § 1983 claims against the officers for unlawful arrest, malicious prosecution, and First Amendment retaliation and her state law malicious prosecution claim by making impermissible factual determinations at the motion to dismiss stage.  We reverse and remand the dismissals on those claims for further proceedings

20                    Opinion of the Court                    20-13867

consistent with this opinion.  We affirm, however, dismissal of the malicious prosecution claim against Anderson and dismissal of Duncan's claims against the City.

**AFFIRMED in part, REVERSED AND REMANDED in part.**

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

June 07, 2023

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  20-13867-AA
Case Style:  Yolanda Duncan v. City of Sandy Springs, et al
District Court Docket No:  1:19-cv-01129-MLB

All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, each party to bear own costs.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1A Issuance of Opinion With Costs